## LURIE v. CITY OF HOUSTON.
### No. 12068.

Court of Civil Appeals of Texas. Galveston.
March 24, 1949.

Rehearing Denied May 5, 1949.

Madison Rayburn and Harry Brochstein, both of Houston, for appellant.

Will Sears, City Atty. and Joseph C. Johnson, Asst. City Attorney, both of Houston, for appellee.

CODY, Justice.

Appellant states that the nature of this proceeding is a suit by appellee to have two wooden frame buildings belonging to

her, located in the City of Houston, declared serious fire hazards to life and property, and abated by demolishing them. Appellant defended on the ground that, aside from being constructed of wood, said buildings could be repaired so as to eliminate any fire hazard, and this without any substantial reconstruction of said buildings. From appellant's pleadings, it would appear that it is her theory that the real basis of appellee's suit to have her buildings demolished is the fact that the same are of wooden construction, and were incorporated in fire zone No. 4 of the City of Houston, in 1937. And it is her position that wooden buildings which have been incorporated in a fire zone may lawfully be repaired as long as such repair does not amount to substantially reconstructing same, and that wooden buildings that have been incorporated in a fire zone cannot be ordered destroyed as public nuisances, nor can they be condemned except upon payment to the owner as private property taken for a public use. In this connection it should be said that it is appellee's position that the buildings in question are public nuisances irrespective of their wooden construction, and their inclusion in a fire zone, and that same could not be abated except by being destroyed.

On the trial the jury found that both buildings were fire hazards; that the three story building could not be repaired without undertaking repairs resulting in a substantial reconstruction thereof; that the two story building was capable of being repaired so as to eliminate the fire hazard. However, upon appellee's motion, the court disregarded the jury's finding that the two story building could be so repaired as being without any support in the evidence, and rendered judgment finding said buildings to be public nuisances as fire hazards and that they could not be rendered otherwise without substantial reconstruction and ordered same to be abated by being destroyed.

It appears that the two buildings in question, along with a third building belonging to appellant, all being located on the same block in the City of Houston, were erected before the section of the city in which they are located became what is called in the record a Negro Section of the city. That appellant moved from said block, and the two buildings which appellee seeks to have abated as public nuisances were rented out as crowded Negro tenements.

Appellant has predicated her appeal on seven points, which as phrased by her read:

1. Where the jury found on substantial evidence that defendant's wooden buildings could be repaired, it was error for the Court to grant plaintiff intervenor's motion to disregard the jury's finding and render judgment against the defendant for destruction of buildings notwithstanding the verdict.

2. Wooden buildings having a legal existence, constructed prior to their inclusion into fire zones of a city, could not be destroyed as public nuisances without payment of reasonable compensation and/or observance of due process of law.

3. Wooden buildings having a legal existence prior to inclusion in the fire zone of a city could not be declared to be a public nuisance and abated by destruction unless such wooden buildings are found as a fact to be more than 50% damaged by rot, deterioration, casualty or dilapidation and cannot be otherwise repaired.

4. Pleadings alleging that wooden buildings were public nuisances on the grounds of being fire hazards were insufficient, and defendant intervenor's exceptions, motion for instructed verdict, motion for judgment non obstante veredicto, for a declaratory relief, and motion for judgment on the verdict should have been sustained.

5. Failure to submit proper special issues raised by pleadings and evidence inquiring offensively as to the existence or nonexistence of facts alleged to constitute wooden buildings fire hazards and defensively as to repairability so as to remove defects was error requiring reversal and prevented the entry of a valid final judgment.

6. Where the Court failed to give requested definitions and explanations of the meaning of legal and technical terms, the Court's charge as submitted was a charge

submitting questions of law and mixed questions of law and fact to the jury and the failure to submit to the jury proper definitions and explanations and the proper component elements of the controlling or ultimate ground of recovery was error requiring reversal.

7. Where plaintiff intervenor recovered judgment for no monetary amount the Court abused its discretion in requiring defendant to execute a $7500 supersedeas or penalty bond payable to the city and such bond was excessive, and denied equal protection under the law.

Appellee, in addition to answering appellant's points with several counterpoints, is also prosecuting a cross-appeal, and in that connection urges two cross-points which we will state after we have passed on the main appeal.

It will be noted that most of appellant's points present mere abstractions. Appellee complains of appellant's disregard of the briefing rules and the resulting difficulty of knowing what appellant is urging. However, appellee has expressly requested that appellant be not required to rebrief. Whether time has been saved by not requiring the case to be rebriefed may be questioned. But with the aid of appellant's brief we are confident that we have grasped the points which appellant intends to urge as error.

█ The principal matter which is concretely urged as error by appellant comes to this: That the allegations in appellee's petition setting up grounds to have appellant's buildings declared public nuisances, and to have same abated by being demolished, are insufficient to support the special issues which the court submitted to the jury, particularly where the issues as submitted were objected to on the ground that, as submitted, the court could not determine from the jury's answers which of the grounds charged as nuisances were sustained by the jury, and how such nuisance could be abated short of destruction of the buildings.

This complaint of appellant is sustained by the record.

The following allegations of appellee's petition were evidently the allegations which the court considered raised the issues which he submitted to the jury. Their substance is, with respect to the two-story building: That the building is extremely dilapidated, rotted and in an unsound condition. That the building is so constructed as to promote the rapid and violent spread of fire throughout all parts of said building. That the tenement rooms are small, crowded, and totally lacking in proper exits. That the hallways are narrow and inadequately lighted. That the electric wiring is extremely bad, and the tenants habitually bridge the fuses. That kerosene, gas and wood stoves are maintained in the building in an unsafe and faulty condition. That the fuses are cracked. That the building has caught fire several times. That the porches and stairs on the second floor are rotted. That the partitions throughout the building are composed either of single board walls or pasteboard. That, "due to the foregoing conditions the said wooden frame building and its occupancy as a tenement is a serious fire hazard to life and property, particularly to the inhabitants of the building."

The court submitted the entire case to the jury on four special issues. Two of the special issues related to the two-story building, and two related to the three-story building. The special issues relative to the three-story building employed the same language as those which related to the two-story building. The special issues relating to the two-story building inquired: I. Whether the two-story building "constitutes a serious fire hazard to life and property?" The jury answered this inquiry in the affirmative. Special issue I-A inquired if said two-story building "cannot be repaired so as to no longer constitute a serious fire hazard to life and property without undertaking repairs amounting to a substantial reconstruction of the building?" The jury answered that it could. With respect to the three-story building, the jury answered Special issue II that the building was a serious fire hazard to life and property, and II-a that it could not be repaired without substantial reconstruction.

The appellee produced evidence in support of its allegations. But we do not be-

lieve that appellee takes the position that at least some of the grounds which it alleged as grounds for having the building declared a public nuisance could not be remedied by repairing the building without substantially reconstructing them. The main ground for appellee's contention that the evidence showed as a matter of law that the two-story building could not be repaired without substantially reconstructing it, is that the patio or entrance is so constructed that, in case of fire, the building itself would act as a flue or a draft or chimney so as to cause the fire to spread rapidly as by a violent bellows. The appellant's evidence did not touch on the issue made by appellee's pleadings and evidence that the building was so constructed as to promote the rapid and violent spread of fire through all its parts. And this evidence of appellee stands undisputed. Appellant contented herself with proving that, structurally, the building was around 75% sound.

■■ It was evidently appellant's theory of the case that appellee was compelled to rely for the validity of its police power to have the buildings declared public nuisances on the fact that they were included in a fire zone of the City of Houston in 1937. This position is inconsistent with appellant's position that, whether or not her buildings constituted a public nuisance was a justiciable question of fact for the court to determine. If, in point of fact, she maintained her building in such a condition as to constitute a serious hazard to life and property, the fact of whether or not the property was in a fire zone is irrelevant. The constitutional guarantee of the right of property contained in the Bill of Rights (Art. I), Sections 17, 19, State Const. Vernon's Ann.St., does not include the right to maintain the property so as to constitute a public nuisance, a menace to the life and property of others.

■■ "The rule is that, in the absence of express legislative sanction, a city is without authority to declare that a nuisance which is not so per se or at common law." Crossman v. City of Galveston, 112 Tex. 303, 309, 247 S.W. 810, 812. The allegations of appellee's petition given

above, were clearly sufficient to charge a nuisance per se, a nuisance at common law. And appellant could have no vested property right to maintain her buildings as a public nuisance irrespective of whether they were located within a fire zone. No doubt a wooden building is not a nuisance per se. But a wooden building can of course become a nuisance by the use to which it is put, or its state of repair, and whether it is a nuisance is a justiciable question which the appellee could bring to issue in a court of competent jurisdiction. Crossman v. City of Galveston, supra, 112 Tex. 303, at page 311, 247 S.W. 810. Again, "Whether or not the building is a nuisance is to be established by legal and competent evidence, in the same manner as any other fact." At page 315 of 112 Tex., at page 815 of 247 S.W. Again, if a building is lawfully erected "it cannot be demolished if the nuisance alleged against it can in any other way—as, for example, by cleaning, disinfection or repair—be abated." At page 316 of 112 Tex., at page 815 of 247 S.W.

■ In a word, the police power committed by the people to governmental agents is limited to the necessity for its use. Appellee had no right to have the jury consider whether the buildings constituted a serious fire hazard to life and property upon any other grounds than those urged by appellee in its petition. And it had no right to have the buildings destroyed if, with respect to each ground so charged, the nuisance could be abated without a substantial reconstruction. As submitted, it is impossible to determine upon which of the grounds charged or a combination thereof, the jury found that the buildings were public nuisances. So far as we can tell from the evidence the nuisance might be abated by no longer being permitted to be used as a tenement building. Appellee's petition expressly charges that the hazard to life and property has particular reference to the tenants. By removing the tenants this hazard would be removed. "The abatement as a remedy must be limited by its necessity, and no unnecessary injury to property must be permitted." City of Forney v. Nounger, Tex.Civ.App., 210 S.W. 240, 242. "Govern-

ed by the general rules, a wooden or frame building not endangering the public at large does not constitute a public nuisance." 46 C.J., § 147, p. 699.

The position of appellee that, in case the two-story building does catch on fire, it is constructed so as to promote violent conflagration in all its parts, comes, we believe, to this, that said building is more inflammable because of the plan of its construction than if it were constructed otherwise. It has been held that a lumber yard where inflammable material is stored is not a nuisance per se. Shamburger v. Schurrer, Tex.Civ.App., 198 S. W. 1069, 1071. In the cited case the court quotes with approval from Wood's Law of Nuisances, the following, "But in order to render a building a nuisance, by reason of the exposure of other buildings to danger from fire, the hazardous character of the business must be unmistakable, the danger imminent, and the use of such an extraordinary and hazardous character as to leave no doubt of the nuisance. The mere fact that the business carried on there is of a hazardous character, and largely increases the rates of insurance upon surrounding property, is not sufficient; it must appear not only that the business or use to which the building is applied is hazardous, but also, that it is conducted in such a careless manner, or in such a locality, as to make injurious results probable." Here there was no allegation, and certainly no proof, that appellant could not remove the danger of the building catching on fire from within the premises.

Appellant objected to the submission of the special issues upon the specific grounds that, as submitted, it could not be determined from the jury's answers what grounds which were plead by appellee were determined to be fire hazards, and that the court could not be apprised of the necessary factual elements to render a judgment requiring the abatement of the complained of defects. It was the duty of the court to submit the controlling issues. The issues submitted were those relied upon by appellee to entitle it to have the defects abated. " * * * if the court submits such issue or attempts to give a definition or an explanatory charge, even though unsatisfactory and incorrect, this brings the parties within the provisions of Rule 274 instead of Rule 279, and the only duty required of a party is to except to the same in language sufficiently clear to call the court's attention to such error, and if overruled, the complaining party is entitled to have the alleged error reviewed by the appellate courts." (Authorities.) Texas & N. O. R. Co. v. Barham, Tex.Civ. App., 204 S.W.2d 205, 209. The court erred to appellant's prejudice, in so far as the case was submitted to the jury as a justiciable issue.

We overrule appellant's point seven complaining that the supersedeas bond as fixed by the court is excessive. This is left to the discretion of the trial court. We think there was no abuse of the court's discretion. We think subdivision (g) of Rule 364, Texas Rules of Civil Procedure, is not unconstitutional, but it is not necessary under the facts of this case to rule thereon.

On appellee's cross-appeal, it presents:

First-Cross-Point: The findings in Ordinance No. 2403 that the buildings were serious fire hazards and unrepairable being reasonably supported by substantial evidence and the council not having acted arbitrarily without regard to the facts, the trial court erred in submitting Special Issues I, I-A, II and II-A to the jury and in refusing to instruct a verdict in favor of the city.

Second-Cross-Point: It conclusively appearing that the three-story or middle building was erected in violation of valid ordinances, its existence was a nuisance per se and the trial court erred in submitting Special Issues II and II-A, and in refusing to instruct a verdict on such issues for the city.

By an ordinance the City Code of the City of Houston was amended to create a Fire Hazard Inspection Committee to aid in the protection of the lives and property of the citizens of Houston. The Committee was made to consist of the Director of Public Works and Engineering, the Chief of the Fire Department and the Fire Marshal. The ordinance provides a procedure

by which the Committee shall hold hearings and inspect buildings alleged to constitute serious fire hazards to life and property. It further provides for reports of the Committee to the city council, and for appropriate action to be taken thereon by the city council, and for the action to be taken by the city attorney to enforce the council's orders.

By Ordinance No. 2403, the building here in question was declared a public nuisance by reason of its being a serious fire hazard to life and property, and ordered the owner to vacate same and cease using same as a tenement within forty days, and ordered same to be demolished within fifty days, and ordered the city attorney to bring the necessary proceedings in the event the owner fails to comply therewith.

The Fire Hazard Inspection Committee held a hearing with respect to appellant's property being a fire hazard. It notified appellant to be present at the hearing on February 12, 1948, but she did not appear. The Committee heard the evidence and personally inspected the property. In a word the prescribed procedure was followed, and the city council considered the Committee's report at a regular meeting, and appellant was there represented by her counsel. The city council found that the facts reported by the Committee were true, and found that appellant's property constituted a serious fire hazard to life and property.

Whether the buildings in question were nuisances is a fact to be established by legal and competent evidence. Crossman v. City of Galveston, supra. In the City of Texarkana v. Reagan, 112 Tex. 317, 247 S.W. 816, 817, the court held "The action of the city council with reference to this building was no warrant for its destruction, and the proceedings of the city council leading up to the destruction of the building are not admissible in evidence in favor of the city in a suit for actual damages only."

Under the procedure adopted by the city, a building could be ordered destroyed by legislative, as distinguished from judicial action. Merely substantial evidence is necessary to support legislative action. If the property rights of the citizen could thus be encroached on we fail to see why the city could not in the same form subject any claim against the city to legislative action. It is required by the Charter of the City of Houston that claims against it be presented before suit is filed thereon. The obvious purpose of such a requirement is that unnecessary suits may thus be obviated in case the city finds the claim meritorious. It is to be presumed that the city would never decline any claim except that there was at least substantial evidence to justify the rejection of such a claim. But a claimant has the right to have the court pass on a justiciable claim and to recover thereon if upon a preponderance of the evidence he can make it appear just.

We overrule appellee's first counter-point.

It does not appear in the record when the three-story building was erected. In the absence of such specific information we find it impossible to say that the building was illegally erected, and therefore a nuisance per se. We overrule appellee's second counter-point.

The court having committed error in the submission of the special issues as pointed out above, the judgment is reversed, and the cause remanded.